## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

PATRICIA DUNAFAN,                     )
                                      )
                     Plaintiff,       )
                                      )
v.                                    )          Case No. CIV-04-1725-M
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of the Social Security   )
Administration,                       )
                                      )
                     Defendant.       )

## REPORT AND RECOMMENDATION

        Plaintiff, Ms. Patricia Dunafan, brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of Defendant Commissioner's final decision denying Ms. Dunafan's

application for disability insurance benefits.   United States District Judge Vicki Miles-

LaGrange has referred this matter for initial proceedings consistent with 28 U.S.C.

§ 636(b)(1)(B) and (C).   The Commissioner has answered and filed the administrative record

(AR).   Both parties have briefed their respective positions, and the matter is now at issue.

For the reasons stated below, it is recommended that the Commissioner's decision be

reversed and remanded.

## I.      The Administrative Decision

        The Administrative Law Judge (ALJ) issued his decision on September 24, 2004, and

found Ms. Dunafan not disabled.   AR 13-19. Following the five-step sequential evaluation

process, *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), the ALJ found at step

one that Ms. Dunafan had not engaged in substantial gainful activity since her alleged

disability onset date of August 15, 2002.  AR 15, 18.  At step two, the ALJ determined that

Ms. Dunafan suffers from a history of neck surgery, back pain and left hip pain, impairments

that are severe within the meaning of the Social Security regulations.  AR 15, 18.  At step

three, the ALJ determined Ms. Dunafan's severe impairments do not meet or equal one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 16, 18.

The ALJ next determined that Ms. Dunafan has the residual functional capacity to

perform the full range of sedentary work.  AR 17, 19.  Based on this residual functional

capacity, the ALJ determined at step four of the sequential evaluation process that Ms.

Dunafan could not return to her past relevant work as Ms. Dunafan worked in the past at jobs

that require more than sedentary exertional activity.  AR 15, 17, 19.  At step five of the

sequential evaluation process, the ALJ determined that Ms. Dunafan could perform sedentary

work as a dispatcher, insurance clerk and surveillance systems monitor.  AR 18, 19.  The

ALJ found that these jobs exist in significant numbers in the national economy.  AR 18.

Therefore, the ALJ determined Ms. Dunafan was not disabled.  AR  18, 19.

Ms. Dunafan appealed the ALJ's decision to the Appeals Council, and the Appeals

Council denied her request for review, AR 5-7, making the ALJ's decision the final decision

of the Commissioner.

II.    **Issue Presented for Judicial Review**

Ms. Dunafan presents a single issue for judicial review.  She claims the ALJ failed to comply with *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) in assessing her credibility with regard to her subjective complaints of pain.

III.    **Standard of Review**

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal.  *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003)  (quotation omitted).   A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

IV.    **The Medical Record**

The record demonstrates that beginning in 1989, Ms. Dunafan reported neck spasms and right shoulder and arm pain.  AR 90.   In May 2002, Ms. Dunafan underwent surgery for the removal of a mass on her left shoulder.  At 149-150.  That same month, Ms. Dunafan was in a car accident.  AR 133, 194, 196.  For the period June 2002 through August 2002, she made repeated visits to her chiropractor, Dr. Mary K. Schwab.  AR 96-137.  During these visits, she reported pain spasms in her back and neck that were at times "unbearable."  AR 112; *see also* 97, 99, 101, 103, 105, 111, 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 133, 135, 137.  Her physician, Dr. William McAfee, reported in July 2002 that her back and shoulder pain had been exacerbated by two previous car wrecks.  He noted that her pain had been managed in the past with Amitriptyline but that she was currently really bothered by the pain "to the point where she is tearful about this."  AR 158.   Dr. McAfee prescribed Celexa, Darvocet and Robaxin and recommended that Ms. Dunafan be seen by a spine specialist.  AR 159.

After consultation with Dr. Edward Shadeed, in October 2002, Ms. Dunafan underwent neck surgery for a herniated nucleus pulposus and degenerative disk disease.  She had an anterior cervical diskectomy with fusion at C5-6, C6-7.  AR 139-144.

In November 2002 Plaintiff reported to Dr. McAfee that she was recovering well from her neck surgery and that her radicular symptoms and numbness in her arms were improving markedly.  AR 156-157.  That same month, Dr. Shadeed, her back surgeon, reported that he

was pleased with Ms. Dunafan's progress but suggested she refrain from physical therapy for the next four months. AR 197.

The next month, in December 2002, Dr. Shadeed noted Ms. Dunafan was experiencing increased axial pain and a sharp pain in the center of her neck. She had improvement in her radicular pain but the axial pain was "progressive and unrelenting." AR 196. He also questioned whether the plate inserted during surgery had migrated a couple of millimeters anteriorly. He noted that ever since her May 2002 motor vehicle accident, Ms. Dunafan had "increasing axial neck pain." AR 196. He added a bone growth stimulator to Ms. Dunafan's treatment in an "attempt to accelerate bony healing" which, in turn he believed would decrease her axial neck pain. AR 196.

In January 2003, Dr. Shadeed reported that Ms. Dunafan's axial and radicular pain had improved but that she still had a significant amount of pain and "most significantly a choking sensation as well as some radiating pain to the mandibular region." He noted both of these conditions began after her May 2002 car accident. AR 195.

The following month, in February 2003, Dr. Shadeed reported no change from the prior month's visit. He prescribed Neurontin to alleviate her pain radiating out into the mandibular region as well as the trapezial and shoulder region. AR 194.

In April 2003, Dr. Shadeed increased the dosage of Neurontin from 300 milligrams to 600 milligrams. He noted that Ms. Dunafan had been wearing her bone growth stimulator for three hours a day and recommended that she continue to wear it.   AR 192.

In May 2003, Dr. Shadeed recommended an epidural steroid injection to decrease her leg pain.  AR 191.  Ms. Dunafan had the injection on May 27, 2003.  AR 170-175.

Upon examination in August 2003, Dr. Shadeed noted that Plaintiff was "visibly distraught" due to pain.  She reported severe neck pain and right upper extremity radicular pain.  She also reported progressive, unrelenting axial low back pain.  Dr. Shadeed requested an MRI.  AR 190.

The MRI was performed on August 28, 2003.  AR 185-186.  Upon review of the MRI, Dr. Shadeed made the following diagnosis: status post anthrodesis, C5-6, C6-7; syrinx T4 to T6; and degenerative disc disease, L4 and L5.  Dr. Shadeed requested a referral to Dr. Stewart Smith for "a second opinion as to the clinical significance of th[e] syrinx."[1]  AR 184.

In December 2003, Ms. Dunafan underwent further surgery to her neck.  AR 213-214. She had performed a posterior arthrodesis, C5-6 and C6-7, a posterior segmental instrumentation at C5 to C7; a harvest of left posterior iliac crest morcellized autograft; a fluoroscopic imaging and supervision and application of mayfield tongs.  AR 214-219.

In January 2004, Dr. Shadeed noted that Ms. Dunafan "continues to have significant muscle spasms" and prescribed Flexeril for treatment.  AR 225.  In April 2004, Dr. Stewart Smith examined Ms. Dunafan on referral from Dr. Shadeed.  AR 220-221.  On review of an MRI of her cervical and lumbar spine, Dr. Smith found good decompression at the C-5/C-6/7 level.  He noted a small syrinx around the T-5 area, "not to the extent that there would be any

---

[1]A syrinx is a pathological tubular cavity in the brain or spinal cord. *Stedman's Medical Dictionary* 1775 (27th ed. 2000).

surgical intervention needed."  AR 220.  His impression was myofascial pain syndrome,

syrinx, and asymptomatic C-spine.  AR 221.

In June 2004, Dr. Shadeed examined Ms. Dunafan in relation to her continued

complaints of pain.  He prescribed Flexril, Lortab and Neurontin and suggested a consult

with Dr. Nael for evaluation of pain management issues "as well as the emotional component

which is going to accompany all such chronic pain syndromes."  AR 223.[2]

## V.   Analysis

Pursuant to *Luna v. Bowen*, 834 F.2d 161, 164-65 (10th Cir. 1987), the proper

framework for analysis of a claimant's evidence of pain requires the ALJ to determine

(1) whether the claimant has established a pain-producing impairment by objective medical

evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the

claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence,

both objective and subjective, the claimant's pain is in fact disabling. *Id.  See also Branum*

*v. Barnhart*, 385 F.3d at 1273.

Ms. Dunafan contends the ALJ failed to evaluate her pain in accordance with each

of three steps required by *Luna*, and therefore, committed legal error.  Despite the lack of

express findings by the ALJ, there is no question that the record demonstrates objective

medical evidence of a pain-producing impairment and a loose nexus between the impairment

---

[2]At the hearing before the ALJ, Ms. Dunafan testified that she would be seeing Dr. Vandairy on July 28, 2004, for pain management and depression.  AR 236.  The medical record does not include any treatment records of Dr. Vandairy.  Whether the ALJ erred in failing to develop the record in this regard is not an issue that has been raised by Ms. Dunafan.

and Ms. Dunafan's pain.  Accordingly, the ALJ was required to evaluate Ms. Dunafan's subjective pain testimony and the other pertinent evidence before him.  *See Luna*, 834 F.2d at 164-165 (once a claimant has shown the existence of a pain-producing impairment and a loose nexus between such impairment and his subjective allegations of pain, the ALJ may not simply rely on objective medical data to determine whether the claimant suffers from disabling pain).  *See also Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988) ("[T]he claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence.").

The ALJ proceeded to discuss whether the objective and subjective evidence of pain rendered Ms. Dunafan disabled.  Therefore, the fact that the ALJ did not make express his findings of a pain-producing impairment and a loose nexus between the impairment and Ms. Dunafan's subjective allegations of pain is not, in and of itself, grounds for reversal. Nonetheless, the ALJ's findings regarding Plaintiff's subjective complaints of pain are legally erroneous and not supported by substantial evidence.

At the hearing before the ALJ, Ms. Dunafan testified that in addition to her neck and back pain, she suffers constant pain in her face.  AR 233.  She also experiences burning pain in her hips and in both legs.  AR 233, 237.  She has difficulty sleeping because of her pain. AR 238.  She suffers muscle spasms daily.  AR 239.  Ms. Dunafan testified that on a good

day, she can sit between thirty and forty minutes. AR 240-241. She can stand no more than thirty minutes at a time. AR 241. She can walk a distance of thirty feet. AR 242.[3]

As to her daily activities, Ms. Dunafan testified she mainly watches television and rests. On better days, she tries to do light housekeeping such as light dusting or a load of laundry because she finds it depressing and overwhelming to do nothing but watch television. AR 243. As for cooking, she only prepares prepackaged food that she can "pop in the oven or in the microwave." AR 244. She cannot stand and cook. AR 244.

Ms. Dunafan testified she has difficulty driving. She cannot get in and out of the car very easily and she cannot turn her neck. AR 245.

Ms. Dunafan testified she takes Neurontin, 600 milligrams, three times per day. AR 247. The medication makes it difficult for her to concentrate and stay focused. AR 246.

The ALJ rejected Ms. Dunafan's testimony regarding her limitations, finding discrepancies between her statements and the medical evidence. As the ALJ stated:

> The claimant's statements concerning the impact of impairments on ability to work have not been entirely credible in light of discrepancies between those assertions and information contained in the documentary reports of treating and examining practitioners, the medical history, and the findings made on examination.

---

[3]The ALJ determined Ms. Dunafan had the residual functional capacity for a full range of sedentary work. AR 17, 19. "In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9p, 1996 WL 374185 at *6. If Ms. Dunafan's testimony were accepted, her inability to sit for more than thirty to forty minutes at a time would preclude her from performing the full range of sedentary work.

AR 17.  *See also* AR 19 ("Subjective statements of record concerning the claimant's impairments and their impact on ability to work have not been entirely credible in light of information contained in the documentary reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's activities of daily living.").

In rendering his conclusion that Ms. Dunafan's allegations of pain and functional limitations are not supported by the medical evidence, the ALJ did not affirmatively link his findings to the evidence of record.  Therefore, is it impossible on judicial review to determine whether the ALJ's credibility findings are supported by substantial evidence.   It is for this very reason that the Tenth Circuit Court of Appeals has condemned the practice of conclusory credibility findings.  *See Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) ("[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight.") (*quoting* SSR 96-7p); *see also Hardman v. Barnhart* 362 F.3d 676, 679 (10th Cir. 2004) (conclusions in the guise of findings fail to inform the court "in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible").

The need to link his findings is of critical importance in a case such as this one where the medical records of treating physicians strongly support the claimant's allegations of pain. Dr. Shadeed's treatment records, in particular, support Ms. Dunafan's allegations of pain.

10

Perhaps most significant is Dr. Shadeed's records upon examination of Ms. Dunafan in June 2004, just one month prior to the hearing before the ALJ.  Dr. Shadeed prescribed numerous pain medications and recommended a consult with a pain management specialist as a result of Ms. Dunafan's chronic pain syndrome.  In addition, Dr. Shadeed's treatment records reflect that Ms. Dunafan has continually complained of significant pain and continually sought treatment for this pain.[4]   Dr. Shadeed's notes include his own observations of Plaintiff's pain syndrome.  For example, in August 2003, Dr. Shadeed noted that Ms. Dunafan was "visibly distraught" as a result of her pain.  Dr. Shadeed also made referrals to other specialists to address possible solutions to her chronic pain.

Dr. McAfee, another treating physician, also observed Ms. Dunafan's chronic pain. On examination in July 2002, Dr. McAfee reported that Ms. Dunafan was bothered by her pain to the point where she was "tearful" about it.  He similarly prescribed pain medication to Ms. Dunafan.

The ALJ did not discuss any of this evidence when he found that Ms. Dunafan's assertions of pain were not entirely credible due to "discrepancies between those assertions and information contained in the documentary reports of treating and examining practitioners, the medical history, and the findings made on examination."  Even in his recitation of Ms. Dunafan's medical history (separate and apart from his credibility findings) the ALJ did not discuss this evidence.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.

---

[4]At the hearing, Plaintiff testified she continues to see Dr. Shadeed every three months.  AR 233.

1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). It was error for the ALJ to ignore this evidence.[5]

The ALJ additionally rejected Ms. Dunafan's testimony based on evidence of her activities of daily living. The ALJ found:

> The claimant appears to have been fairly active throughout the time period under review. Activities of daily living have included taking care of personal needs, watching television, preparing simple meals, doing laundry, performing light household chores, shopping for groceries, reading, visiting with friends or relatives on an occasional basis, driving when necessary and attending church activities. Although the claimant mentioned problems with medication at the hearing, significant adverse side effects from medication have not been shown in the medical reports. Although the claimant has some functional restrictions, the medical record as a whole does not support a finding of disabling functional restrictions.

AR 17. A review of her testimony, however, reveals that the ALJ exaggerated the nature of her daily activities. For example, the ALJ found that Ms. Dunafan prepares simple meals and does laundry and light household chores. However, as set forth above, Ms. Dunafan testified she only prepares prepackaged food that she can "pop in the oven or in the microwave." AR 244. She cannot stand and cook. AR 244. She also testified that on a "better day" she can lightly dust half of her house. AR 243. She then has to rest the following day. Similarly,

---

[5]The Commissioner cites medical evidence that supports the ALJ's findings and contends, therefore, that the ALJ properly evaluated Plaintiff's subjective complaints. The Commissioner's attempt to offer post-hoc rationalizations for the ALJ's determination is improper. *See, e.g., Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."). The ALJ's failure to provide citations to the medical evidence upon which he relied or to link his credibility findings to the evidence requires a remand.

on a "good day" she might try to do one load of laundry.  AR 243.  In her application paperwork, Ms. Dunafan explained that her husband or son must lift and carry the laundry baskets and that she keeps the loads small or medium in size.  AR 74.

The ALJ also found that activities of daily living include shopping for groceries, reading, visiting with friends or relatives on an occasional basis, driving when necessary and attending church activities.  No testimony about these activities was taken from Ms. Dunafan at the hearing before the ALJ.  Apparently, therefore, the ALJ relied upon Ms. Dunafan's responses to questions contained in her application paperwork.  As to grocery shopping, Ms. Dunafan wrote that she shops once or twice every two weeks and that her husband always goes with her to do the lifting.  AR 74.  She stated that she will go alone to the store for small items at a store four miles from her house if her husband is not available. AR 74.  She attends Sunday school depending on her pain level and some Sundays she is unable to attend.  AR 76.    She visits friends or relatives once or twice a month for one to two hours and her husband drives her to these visits.  AR 76.

"[T]he ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*  987 F.2d 1482, 1490 (10th Cir.1993) (*citing Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987)).  "The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'" *Id*. (*quoting Frey*, 816 F.2d at 516-17) (additional citations omitted).  Therefore, the ALJ's findings regarding Ms. Dunafan's daily activities do not constitute substantial evidence to support his credibility analysis of her pain.

In sum, the ALJ's assessment of Ms. Dunafan's credibility is erroneous because the ALJ failed to closely and affirmatively link his credibility conclusions to the objective evidence and failed to discuss significantly probative evidence supporting Ms. Dunafan's allegations upon which he chose not to rely.  *See Hardman,* 362 F.3d at 681.  In addition, the ALJ ignored additional factors critical to a proper pain analysis such as the extensiveness of the attempts to obtain relief, the frequency of medical contacts, and subjective measures of credibility that are peculiarly within the judgment of the ALJ.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).[6]  A remand, therefore, is required.

On remand, the ALJ should evaluate Ms. Dunafan's allegations of pain and limitations in accordance with the proper legal standards and consider all factors relevant to that analysis.  If the ALJ rejects Ms. Dunafan's subjective complaints of pain, he should give specific reasons for doing so, closely and affirmatively link his credibility conclusions to objective evidence, and discuss any significantly probative evidence supporting Ms. Dunafan's allegation upon which he chose not to rely.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

---

[6]At the hearing before the ALJ, the ALJ observed that Ms. Dunafan's neck was "bright red." She explained that the redness is indicative of her pain and that when she talks a lot the pain gets a lot worse. AR 238-239. Also at the hearing, the ALJ observed that Ms. Dunafan had been holding the left side of her neck with her left arm.  Ms. Dunafan explained that she has to provide that support to alleviate pain.  AR 245-246.  The ALJ did not address either of these observations in rejecting Ms. Dunafan's subjective complaints of pain.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by November __3rd__, 2005.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __14th__ day of October, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE